IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL R. COTTER, | ) |
| | ) |
| | ) Case No. 2:10-CV-04277-NKL |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MILLER COUNTY | ) |
| AMBULANCE DISTRICT, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| THOMAS SPRIGGS, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW Michael R. Cotter (hereinafter "Plaintiff" or "Plaintiff Cotter"), by and through his attorney of record, and for the following causes of action against Defendants Miller County Ambulance District ("MCAD") and Thomas Spriggs, states and alleges the following:

## THE PARTIES

1. Plaintiff is an individual residing at 553 Cedar Street, Sutherlin, Oregon, who was terminated from his position as an EMT with Defendant MCAD in or around June 2010.

2. Defendant MCAD is a county fire department and ambulance service with a principle office located in Miller County, Missouri. Defendant MCAD may be served through its registered agent, Thomas Spriggs, 1304 South Aurora, Eldon, Missouri 65026.

3. Defendant MCAD employed at least 50 people in 2009 and is an "employer" within the meaning of the Missouri Human Rights Act ("MHRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq. ("Title VII").

1

4. Defendant Spriggs, upon information and belief, is a male citizen and resident of the State of Missouri, and at all relevant times referred to herein, served as the Administrator for Defendant MCAD and was responsible for supervising employees of Defendant MCAD.

5. Defendant Spriggs is an "employer" within the meaning of the MHRA because he was a supervisory level employee who acted in the interest of Defendant MCAD.

6. At all times relevant hereto, MCAD was acting by and through its agents, servants and/or employees, actual or ostensible, including, but not limited to Thomas Spriggs, who was acting within the course and scope of his employment.

## JURISDICTION AND VENUE

7. This action for legal and equitable relief arises under, and the jurisdiction of this Court is invoked pursuant to § 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), Section 1981, 28 U.S.C. § 1331 (federal question), and the Civil Rights Act of 1991.

8. This lawsuit is also brought under the Missouri Human Rights Act ("MHRA") for Defendants' retaliatory treatment and discharge of Plaintiff. This Court has subject matter jurisdiction over the state law claims set out *infra*, by virtue of this Court's supplemental jurisdiction under 28 U.S.C. § 1367, since they form part of the same case or controversy under Article III of the United States Constitution because Plaintiff Cotter's federal and state law claims derive from a common nucleus of operative facts such that they ordinarily would be expected to be tried in one judicial proceeding.

9. Original jurisdiction lies herein pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all of the illegal actions occurred in this District.

11. All conditions precedent to jurisdiction under listed statutes have occurred or been

complied with.

12. This civil action arises out of the retaliatory treatment and discharge of Plaintiff by employees and managers of MCAD, including but not limited to the retaliatory termination and treatment of Plaintiff Cotter by Defendant Spriggs, a MCAD supervisory level employee.

13. On or about June 9, 2010, Plaintiff Cotter filed his initial "Charge of Discrimination" ("Charge") in a timely manner with the Missouri Commission on Human Rights ("MCHR") based on the retaliation he experienced while employed by MCAD. The matter was assigned MCHR Charge Number E06/10-37886.

14. Plaintiff Cotter's Charge was dual filed in a timely manner with the Equal Employment Opportunity Commission ("EEOC") based on the retaliation he experienced while employed at Miller County. The matter was assigned EEOC Charge Number 28E-2010-01423.

15. The MCHR issued Plaintiff Cotter his "Right to Sue" letter, which is dated September 20, 2010. This lawsuit is being filed within ninety (90) days of the date of the MCHR letter. *Exhibit A.*

16. The MCHR closed Plaintiff Cotter's Charge of Discrimination on September 20, 2010.

17. The EEOC issued Plaintiff his "Right to Sue" letter, which is dated October 28, 2010. This lawsuit is being filed within ninety (90) days of the date of the MCHR letter. *Exhibit B.*

18. The EEOC closed Plaintiff Cotter's Charge of Discrimination on October 28, 2010.

19. All of the requisite conditions precedent to this Court having jurisdiction under the MHRA and Title VII have been met.

## GENERAL ALLEGATIONS

20. In May 2004, Plaintiff Cotter was hired as an EMT at MCAD. At all relevant times hereto, Plaintiff was a full-time employee and MCAD was Plaintiff's employer.

21. At all relevant times hereto, Defendant Spriggs was Plaintiff Cotter's supervisor at MCAD.

22. In November 2010, MCAD female employees Fanci Bennett and Amanda Jenkins jointly filed gender discrimination, sexual harassment and retaliation claims in federal court against MCAD.

23. Ms. Bennett and Ms. Jenkins were subjected to continuous discrimination and harassment during their respective times employed at MCAD.

24. Ms. Bennett sought Plaintiff's advice numerous times regarding how she should respond to the various sexual harassment and discrimination she experienced from May 2007 to June 2010 while employed with MCAD.

25. Ms. Jenkins also sought Plaintiff's advice regarding how she should respond to the sexual harassment she experienced from August 2007 to June 2010 while employed with MCAD.

26. Plaintiff suggested Ms. Bennett and Ms. Jenkins report the treatment to the proper authorities beginning with Defendant Spriggs..

27. The working conditions did not improve after Ms. Bennett and Ms. Jenkins made numerous reports to Defendant Spriggs..

28. Plaintiff wrote a letter to Defendant Spriggs in late 2007, complaining about the harassment and discrimination of Ms. Bennett, and requesting that Defendant Spriggs take action to prevent future occurrences of sexual harassment and discrimination.

29. Defendant Spriggs was at all times aware of the close personal friendship between Plaintiff and Ms. Bennett, and he warned Mr. Cotter on at least one occasion that his relationship with Ms. Bennett could jeopardize his employment at MCAD.

30. Defendants have demonstrated a pattern of discrimination, harassment, and retaliatory conduct.

31. In May 2010, former MCAD female employees Kelly Drennan, Marquerita Maeder and Marlene Handrick jointly filed a gender discrimination and sexual harassment lawsuit in federal court against MCAD.

32. On or about June 4, 2010, the same day as Ms. Bennett and Ms. Jenkins, Plaintiff Cotter was unjustly, wrongfully and unlawfully terminated by MCAD for advocating on behalf of three women whom he reasonably believed to have been sexually harassed and discriminated against on the basis of their gender.

33. Plaintiff was, at all material times, satisfactorily meeting or exceeding MCAD's legitimate job expectations.

34. Prior to his termination, Plaintiff had not been disciplined or written up for misconduct at any point during his six and a half years of employment with Defendant MCAD.

34. At all times relevant hereto, MCAD was acting by and through its agents, servants and/or employees, actual or ostensible, including, but not limited to Thomas Spriggs, who was acting within the course and scope of his employment.

## COUNT I - RETALIATORY DISCHARGE
## IN VIOLATION OF MHRA

35. Plaintiff hereby adopts and incorporates the allegations set forth in paragraphs 1 through 34 above, as though fully set forth herein.

36. Plaintiff witnessed management level employees of Defendant MCAD sexually harass and discriminate against Fanci Bennett and Amanda Jenkins on the basis of their sex.

37. Ms. Bennett and Ms. Jenkins are women and are members of a protected class with regard to their sex under the MHRA, §§ 213.010, *et seq.*, RSMo.

38. On numerous occasions from May 2007 to June 2010, Fanci Bennett sought Plaintiff's advice regarding how she should handle the harassment and discrimination and Plaintiff suggested Ms. Bennett report the treatment to the proper authorities beginning with Defendant Spriggs.

39. On numerous occasions from August 2007 to June 2010, Amanda Jenkins sought Plaintiff's advice regarding how she should handle the harassment and discrimination and Plaintiff suggested Ms. Bennett report the treatment to the proper authorities beginning with Defendant Spriggs.

40. The discriminatory conditions did not improve after Ms. Bennett and Ms. Jenkins complained to Defendant Spriggs.

41. Plaintiff reasonably believed that Ms. Bennett and Ms. Jenkins were being sexually harassed and discriminated against on the basis of their sex.

42. Plaintiff wrote a letter to Defendant Spriggs in late 2007 complaining about the harassment and discrimination of Ms. Bennett and requesting that Defendant Spriggs take action to prevent future occurrences of sexual harassment and discrimination.

43. On multiple occasions thereafter, Plaintiff defended Ms. Bennett and Ms. Jenkins against discrimination by coworkers and employees on the basis of their sex.

44. Plaintiff was terminated on or about June 4, 2010, and his complaints to Defendant Spriggs regarding the harassment and discrimination of Ms. Bennett, Ms. Jenkins,

6

Case 2:10-cv-04277-NKL  Document 26  Filed 08/29/11  Page 6 of 13

and/or Ms. Brown were contributing factors in Defendants' decision to terminate Plaintiff.

45. Plaintiff's advice to both Ms. Bennett and Ms. Jenkins to report the harassment and discrimination were contributing factors in the Defendants' decision to terminate Plaintiff.

46. Plaintiff's well-known close personal relationship with Ms. Bennett, who made official complaints of unlawful sexual discrimination at MCAD, brings him within the "zone of interests" sought to be protected by the MHRA.

47. Plaintiff is a person aggrieved under the MHRA because his termination was in retaliation against Ms. Bennett for making official complaints of unlawful sexual discrimination at MCAD.

48. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff has suffered substantial actual damages, including, but not limited to: lost past income, lost past and future employment benefits, humiliation, embarrassment, mental distress, emotional pain, harm to reputation, severe career disruption, inconvenience, and loss of enjoyment of life.

49. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff was unable to find comparable employment and was forced to uproot his life and relocate.

50. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff has suffered an extreme amount of stress and anxiety resulting in a heart attack that he suffered on September 10, 2010.

51. Defendants' conduct was outrageous due to their evil motive and disregard for Plaintiff's rights, thereby entitling him to punitive damages.

52. Plaintiff is entitled to punitive damages in such amounts as the jury deems fair,

reasonable, and sufficient to punish Defendants and deter others from like conduct.

53. Plaintiff is entitled under the MHRA to recover all costs incurred herein, including reasonable attorneys' fees and all other costs and expenses of litigation.

54. Plaintiff also seeks prejudgment interest on all actual damages found by the jury to be due and owing through date of trial.

WHEREFORE, Plaintiff, Michael Cotter, prays for judgment, after a jury trial, awarding Plaintiff all actual damages and losses shown in evidence, and determined by the jury to be fair and reasonable, for prejudgment interest, for punitive damages, for attorneys' fees and expenses, for all other damages and costs incurred, and for such other relief as the Court deems proper.

## COUNT II – RETALIATORY DISCHARGE IN VIOLATION OF TITLE VII

55. Plaintiff hereby adopts and incorporates the allegations set forth in paragraphs 1 through 54 above, as though fully set forth herein.

56. Plaintiff witnessed management level employees of Defendant MCAD sexually harass and discriminate against Fanci Bennett and Amanda Jenkins on the basis of their sex.

57. Ms. Bennett and Ms. Jenkins are women and are members of a protected class with regard to their sex under the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq. On numerous occasions from May 2007 to June 2010, Fanci Bennett sought Plaintiff's advice regarding how she should respond to the instances of harassment and discrimination she suffered while worked for Defendant MCAD. Plaintiff suggested Ms. Bennett report the treatment to the proper authorities, beginning with Defendant Spriggs.

58. On numerous occasions from August 2007 to June 2010, Amanda Jenkins sought Plaintiff's advice regarding how she should respond to the instances of harassment and

discrimination she suffered while working for Defendant MCAD. Plaintiff suggested Ms. Jenkins report the treatment to the proper authorities, beginning with Defendant Spriggs.

59. The discriminatory conditions did not improve after Ms. Bennett and Ms. Jenkins complained to Defendant Spriggs.

60. Plaintiff reasonably believed that Ms. Bennett and Ms. Jenkins were being sexually harassed and discriminated against on the basis of their sex.

61. Plaintiff wrote a letter to Defendant Spriggs in November 2007 complaining about the harassment and discrimination of Ms. Bennett, Ms. Jenkins and/or Ms. Michele Brown (a former employee who was also harassed and discriminated against by a supervisory employee at MCAD) and requesting that Defendant Spriggs take action to prevent future occurrences of sexual harassment and discrimination.

62. On multiple occasions thereafter, Plaintiff defended Ms. Bennett and Ms. Jenkins from co-workers and supervisors discriminating against them on the basis of their sex.

63. Plaintiff was terminated on or about June 4, 2010, and his complaints to Defendant Spriggs regarding the harassment and discrimination of Ms. Bennett and Ms. Jenkins were both motivating and determining factors in Defendants' decision to terminate Plaintiff.

64. Plaintiff's advice to both Ms. Bennett and Ms. Jenkins to report the harassment and discrimination were both motivating and determining factors in the Defendants' decision to terminate Plaintiff.

65. Plaintiff's well-known close personal relationship with Ms. Bennett, who made official complaints of unlawful sexual discrimination at MCAD, brings him within the "zone of interests" sought to be protected by Title VII.

66. Plaintiff is a person aggrieved under Title VII because his termination was in

retaliation against Ms. Bennett for making official complaints of unlawful sexual discrimination at MCAD.

67. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights as alleged above, Plaintiff has suffered substantial actual damages, including, but not limited to: lost past income, lost past and future employment benefits, humiliation, embarrassment, mental distress, emotional pain, harm to reputation, severe career disruption, inconvenience, and loss of enjoyment of life.

68. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff was unable to find comparable employment and was forced to uproot his life and relocate.

69. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights as alleged above, Plaintiff has suffered an extreme amount of stress and anxiety resulting in a heart attack that he suffered on September 10, 2010.

70. Defendants' conduct was outrageous due to their evil motive and disregard for Plaintiff's rights, thereby entitling him to punitive damages.

71. Plaintiff is entitled to punitive damages in such amounts as the jury deems fair, reasonable, and sufficient to punish Defendants and deter others from like conduct.

72. Plaintiff is entitled under Title VII to recover all costs incurred herein, including reasonable attorneys' fees and all other costs and expenses of litigation.

73. Plaintiff also seeks prejudgment interest on all actual damages found by the jury to be due and owing through date of trial.

WHEREFORE, Plaintiff, Michael Cotter, prays for a judgment awarding Plaintiff all actual damages and losses shown in evidence, and determined by the jury to be fair and

reasonable, for prejudgment interest, for punitive damages, for attorneys' fees and expenses, for all other damages and costs incurred, and for such other relief as the Court deems proper.

## COUNT III - AGGRAVATING CIRCUMSTANCES – DAMAGES FOR ALL CLAIMS

74. Plaintiff hereby adopts and incorporates the allegations set forth in paragraphs 1 through 73 above, as though fully set forth herein.

75. Defendants committed one or more of the willful, wanton, and malicious acts more fully set forth above which individually and/or cumulatively justify the submission of punitive damages in this case.

76. Plaintiff's professional reputation has been damaged, making it difficult if not impossible for him to obtain employment comparable to his position with Defendant MCAD at the time he was terminated. Thus, Defendants actions caused significant economic loss to Plaintiff.

77. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff was unable to find comparable employment and was forced to uproot his life and relocate.

78. As a direct and proximate result of Defendants' unlawful violation of Plaintiff's rights, as alleged above, Plaintiff has suffered an extreme amount of stress resulting in a heart attack that he suffered on September 10, 2010.

79. The willful, wanton, and malicious acts of Defendants, as more fully set forth above, evidence Defendants showed complete indifference to and/or conscious disregard for the rights and well-being of Plaintiff and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiff prays for judgment against all Defendants for all counts listed above and:

(1) Back-pay and the value of fringe benefits from the date of termination;

(2) Reinstatement or in the alternative front-pay for at least five (5) years;

(3) Compensatory damages to place him in the economic position he would have been in if he had not been retaliated against;

(4) Damages for humiliation, embarrassment, stress, and anxiety;

(5) Punitive damages in such an amount as will serve to punish and deter the Defendants, and others similarly situated, from engaging in like conduct;

(6) Pre-judgment and post-judgment interest;

(7) Attorney's fees, costs and whatever other damages this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable herein.

Dated this __th day of August, 2011.

Respectfully submitted,

/s/ Blake P. Green
Blake P. Green          MO #60833
BURGESS & LAMB PC
(816) 471-1700
Fax: (816) 471-1701
1000 Broadway, Suite 400
Kansas City, MO 64105
blake@burgessandlamb.com
**ATTORNEYS FOR PLAINTIFF**